IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

BRIAN FERNALD, :
:
    Petitioner :
: CIVIL NO. 1:10-CV-2473
:
v. : Hon. John E. Jones III
:
:
WARDEN RONNIE HOLT, :
:
    Respondent :

## **MEMORANDUM**

April 25, 2011

**THE BACKGROUND OF THIS MEMORANDUM IS AS FOLLOWS:**

Petitioner Brian Fernald ("Petitioner" or "Fernald"), an inmate presently confined at the United States Penitentiary Canaan ("USP Canaan") in Waymart, Pennsylvania, initiated the above action *pro se* by filing a Petition for Writ of Habeas Corpus ("Petition") under the provisions of 28 U.S.C. § 2241. (Doc. 1.) He alleges that his right to due process was violated during disciplinary proceedings that resulted in a finding of guilt of use of drugs and the imposition of sanctions, including the loss of good conduct time. In particular, he challenges the failure of the Disciplinary Hearing Officer ("DHO") to review a video tape which he claims would show that the officer who collected his urine specimen failed to comply with the chain of custody

requirements.

We directed service of the Petition on Respondent on December 20, 2010, and directed Respondent to file an answer to the Petition within twenty-one (21) days. (Doc. 4.)  On January 10, 2011, Respondent filed a Response (Doc. 5) and supporting exhibits[1] (Doc. 5-2).  Petitioner filed his Reply (Doc. 6) on February 10, 2011.  Thus, the Petition is fully briefed and ripe for review.  For the reasons set forth herein, the Petition will be denied.

## I.    FACTUAL BACKGROUND

Fernald currently is serving a 170 month sentence for Bank Robbery that was imposed by the United States District Court for the Southern District of Florida on November 1, 2002.  (Doc. 5-1 at 3, Romano Decl., ¶ 2; Doc. 5-1 at 5, Public Information Inmate Data.[2])  As of the date of filing of the Response, his projected release date was December 1, 2015, via good conduct time release.  (*Id.*)

---

[1] Respondent submitted the Declaration of Michael S. Romano, BOP Attorney Advisor at the United States Penitentiary at Lewisburg, Pennsylvania (Doc. 5-1 at 3-4).  Attached to Romano's Declaration are a copies of Fernald's Public Information Inmate Data (*id.* at 5-7), and documents relating to the instant Petition, including Incident Report #1953357 (*id.* at 8-9); Notice of Discipline Hearing Before the DHO (*id.* at 10); Inmate Rights at Discipline Hearing (*id.* at 11); the DHO Report for the December 17, 2009 Discipline Hearing (*id.* at 12-15); the BOP Chain of Custody Form for the specimen collected from Fernald on December 1, 2009 (*id.* at 16); the 12/7/09 Laboratory Report (*id.* at 17); a 12/2/09 Memorandum from B. Roberts, Special Investigative Technician (*id.* at 18); a document relating to the referral of the incident report to the DHO (*id.* at 19); a 12/1/09 Memorandum from Lieutenant D. Mrad (*id.* at 20); and Fernald's written statement (*id.* at 21).

[2] Citations to page numbers of documents filed on the docket in this action are to the numbers generated by the CM/ECF Filing System.

On December 1, 2009, upon Fernald's return from an outside hospital for treatment of a narcotics overdose, Officer Dominick had Fernald provide a urine specimen. (Doc. 5-1 at 8, Incident Report #1953357, ¶ 11.) The Incident Report indicates that Fernald had been rushed to an outside hospital and was administered "Narcan" to counteract the effects of his overdose on heroin. (*Id.* at 9 ¶ 25.) On December 9, 2009, the Special Investigative Services Office ("SIS") received the urine test results from National Toxicology Laboratories, which indicated that Fernald had tested positive for the drug Opiates. (*Id.* at 8 ¶ 11.) Information obtained from the Health Services Department indicated that Fernald was not prescribed any medication that would have resulted in a positive testing for the drug Opiates. (*Id.*)

On December 9, 2009, Fernald was issued Incident Report No. 1953357 charging him with the prohibited act of Use of Narcotics or Related Paraphernalia not Prescribed for the Individual by Medical Staff, in violation of Code 112. (*Id.* ¶¶ 9-10, 14-15.) On December 10, 2009, Fernald was provided a Notice of Discipline Hearing Before the DHO and Inmate Rights at Discipline Hearing Form. (*Id.* at 10-11.)

At the outset of his hearing before the DHO on December 17, 2009, the DHO advised Fernald of his rights, and Fernald indicated that he understood them, including his waiver of staff representation and waiver of witness testimony. (*Id.* at 12, DHO Report, § III. B.) The DHO Report further reflects the following:

3

During the hearing, Fernald was given the opportunity to provide a statement, which he chose to do. (*Id.*) Specifically, Fernald stated as follows: "The form wasn't present at the time of the urinalysis. I was never offered to sign it. The staff member never signed it in my presence. The video repudiates the charges." (*Id.*) Further questioning of Fernald by the DHO elicited that the urine specimen was requested in the shower area of the upper tier in the Special Housing Unit ("SHU"), and Fernald specifically stated as follows: "The lieutenant handed me the cup. I walked in the shower. I took a leak in the cup. Officer Dominick retrieved the cup and they left." (*Id.*) The questioning also elicited an acknowledgment by Fernald that he had gone to an outside hospital on November 30, 2009, the day before the incident, because he was "unresponsive" and that he had returned to USP Canaan the morning of December 1, 2009. (*Id.* at 12-13 § III. B.) When questioned why he was "unresponsive" and as to the hospital's diagnosis, Fernald replied, "They (hospital staff) said it was a possible overdose." (*Id.* at 13 § III. B.) Fernald denied ingesting or being under the influence of narcotics. (*Id.*)

The DHO advised Fernald that video evidence was excluded as it was not considered evidentiary in the proceedings. (*Id.*) However, the DHO indicated that he reviewed a written statement from Fernald to the Unit Discipline Committee ("UDC") in which he contests urine collection procedures. (*Id.*) The DHO explained that,

4

although Fernald affirmed with his signature of the Notice of Discipline Hearing Before the DHO that he neither elected witness testimony nor staff representation (*see* Doc. 5-1 at 10), in his written statement, Fernald requested as witnesses J. Dominick, Correctional Officer, and D. Mrad, Lieutenant (*see id.* at 21). (*Id.* at 13 § III. C. 3.) The DHO concluded that the testimony that would be obtained from D. Mrad and J. Dominick would be "inconsequential and non-exculpatory" because Mrad's statement was adequately provided in his memorandum that already was part of the record (*see id.* at 20), and Dominick had affirmed with his signature on the chain of custody form his compliance with the chain of custody requirements in the handling of Fernald's urine sample (*see id.* at 16). (*Id.*) Mrad's Memorandum, which is attached to the DHO Report, states as follows:

> On December 1, 2009, inmate Fernald, Brian, #71876-004, was housed in the Special Housing Unit following a return from the outside hospital for a [*sic*] treatment for a narcotics over dose. When informed he would need to provide a urine sample[,] Fernald stated he was still 'High' and he would come 'Hot'. Based on his claims of being under the influence and his outward actions indicating he was under the influence of narcotics, he was not able to sign for the urine sample.

(*Id.* at 20.)

The DHO found based upon the greater weight of the evidence that Fernald committed the prohibited act of use of a narcotic or related paraphernalia. (*Id.* at 14 § IV.) The DHO provided an explanation of the specific evidence he relied upon,

which included the Description of the Incident provided by the Reporting Staff Member in the Incident Report (*see* Doc. 5-1 at 8 ¶ 11); the National Toxicology Laboratories and BOP Chain of Custody for Drug Analysis form, reflecting a date of collection on December 1, 2009 (*see id.* at 16); a National Toxicology Laboratories Report dated December 7, 2009 indicating a confirmed positive reading for Opiates (*see id.* at 17); and Fernald's own statement, as reflected in Lieutenant Mrad's Memorandum, upon return from the outside hospital for treatment of a drug overdose that "he was still 'High' and he would come 'Hot'", and also that, due to being under the influence of narcotics, Fernald was unable to sign the Chain of Custody Form (*see id.* at 20).  (*Id.* at 14 § V.)  The DHO also explained that he found credible the eyewitness accounts of the reporting staff members, while finding Fernald's responses to his questions "disingenuous and intentionally illusive." (*Id.*)

The DHO sanctioned Fernald with the disallowance of forty (40) days of good conduct time; the forfeiture of 150 days non-vested good conduct time; sixty (60) days of disciplinary segregation; two (2) years loss of commissary privileges; four (4) years loss of visiting privileges, expiring December 17, 2013; four (4) years of visiting restriction, to begin upon reinstatement of visiting privileges, and to include immediate family and non-contact only; two (2) years loss of commissary privileges, expiring March 25, 2012; the impoundment of property, including legal and religious

materials, for sixty (60) days; two (2) years loss of telephone privileges, expiring January 25, 2012; and two (2) years loss of TRULINC privileges, expiring December 17, 2011.  (*Id.* at 15 § VI.)

## II.   DISCUSSION

The Fourteenth Amendment of the United States Constitution provides in pertinent part as follows: "No State shall . . . deprive any person of life, liberty, or property, without due process of law . . . ."  Federal inmates possess a liberty interest in good conduct time.  *See Wolff v. McDonnell*, 418 U.S. 539, 555-57 (1974); *Young v. Kann*, 926 F.2d 1396, 1399 (3d Cir. 1991).  Accordingly, "[h]abeas corpus relief is available to a prisoner who has been sanctioned in violation of due process to a loss of good conduct time."  *Robinson v. Warden*, 250 Fed. Appx. 462, 464 (3d Cir. 2007).

In *Wolff*, where the plaintiffs were deprived of good time credits as a severe sanction for serious misconduct, the Supreme Court held that such inmates had various procedural due process protections in a prison disciplinary proceeding, including the right to call witnesses and to appear before an impartial decision-maker. 418 U.S. at 563-73.

In particular, the Court recognized that "prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such

proceedings does not apply." *Id.* at 556.  Nonetheless, the Court held that a prisoner facing serious institutional sanctions is entitled to some procedural protection before penalties can be imposed. *Id.* at 563-71.  The Court set forth the following five requirements of due process in a prison disciplinary proceeding: **(1)** the right to appear before an impartial decision-making body; **(2)** twenty-four hour advance written notice of the charges; **(3)** an opportunity to call witnesses and present documentary evidence, provided the presentation of such does not threaten institutional safety or correctional goals; **(4)** assistance from an inmate representative, if the charged inmate is illiterate or if complex issues are involved; and **(5)** a written decision by the fact finders as to the evidence relied upon and the rationale behind their disciplinary action. *Id.*

Where the due process requirements of *Wolff* are met, the decision of the hearing examiner will be upheld if there is "some evidence" to support the decision to revoke good time credits. *Superintendent v. Hill,* 472 U.S. 445, 455 (1985); *see also Young,* 926 F.2d at 1402-03 (applying *Hill* standard to federal prisoner due process challenges to prison disciplinary proceedings).  The determination of whether the standard is satisfied "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence.  Instead, the relevant question is whether there is *any* evidence in the record that could support the

conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455-56. Under *Hill,* judicial review of a prison disciplinary decision is limited to ensuring that the prisoner was afforded certain procedures, the action against him was not arbitrary, and that the ultimate decision has some evidentiary support. *Id.* at 457; *see also* 28 C.F.R. § 541.17(f) (requiring that the DHO's decision be based upon at least some facts and, if there was conflicting evidence, to be based on the greater weight of the evidence).

In the instant case, it is apparent upon review of the record that Fernald was afforded each of the due process protections set forth in *Wolff* in connection with the disciplinary proceedings that form the basis for this action. Specifically, he received the opportunity to appear before a DHO, and in fact did so at the hearing on December 17, 2009; he was provided with written notice of the charges against him in the incident report and notice of his DHO hearing, delivered on December 9 and 10 respectively, which was more than twenty-four (24) hours before his disciplinary hearings; he was afforded the opportunity to call witnesses and to present documentary evidence, and although the DHO decided not to call the witnesses Fernald requested in his written statement, the DHO provided a written explanation of his reasons for not calling those witnesses, as summarized above; Fernald was given the opportunity to have the assistance of a staff representative of his own choosing, and he ultimately chose to waive that right; and he was provided with a thorough written explanation of the DHO's decision, as well

as the rationale for the decision.

It also is apparent that the DHO's decision was supported by "some evidence" and that the DHO properly documented his findings and specific evidence relied on in reaching those findings as required by 28 C.F.R. § 541.17(g).  Although Fernald argues in his reply brief that his right to due process was violated by the failure of the DHO to consider a video tape which he claims would show that the officer who collected his urine specimen failed to comply with chain of custody requirements[3] (*see* Doc. 6 at 1-2), the DHO advised Fernald at hearing that the video evidence was excluded because it was not considered evidentiary in the proceedings.  (*See* Doc. 5-1 at 13 § III. B.)  The DHO also explained in citing the specific evidence he relied on that he afforded little weight to Fernald's statement that the officer failed to follow chain of custody requirements and

---

[3]In support of his argument, Fernald cites *Piggie v. McBride*, 277 F.3d 922 (7th Cir. 2002).  In that case, an inmate confined in an Indiana prison was found guilty by the prison conduct board of sexually assaulting a correctional officer in a prison hallway.  In his petition for writ of habeas corpus filed with the United States District Court for the Northern District of Indiana, the petitioner argued that he was denied due process of law when the prison conduct board failed to review a videotape that would show that he accidentally touched the corrections officer when he passed her in the hallway.  On appeal, the Seventh Circuit Court of Appeals disagreed with the District Court's determination that the prison disciplinary board's finding that the petitioner had failed to timely request the videotape was a determination of a factual issue by a state court that was entitled to a presumption of correctness under the provisions of 28 U.S.C. § 2254(e)(1).  Because the District Court applied the presumption of correctness in denying habeas relief, the Court of Appeals remanded the case to the District Court to make factual determinations regarding the petitioner's request for the videotape.  The decision of the Court of Appeals for the Seventh Circuit is not binding on this Court, which sits in the Third Circuit.  Even if it were, our denial of habeas relief in this case is not based upon a presumption of correctness as to the DHO's determination that the videotape was not evidentiary.  Rather, we have undertaken our function on habeas review of determining whether there is any evidence in the record that could support the conclusion reached by the DHO, and have concluded that there is.  *See Hill*, 472 U.S. at 455-56.

that the video would repudiate the charges in light of Fernald's statements upon further questioning whereby he acknowledged that he provided the urine sample to the officer in the shower area of the SHU, and that he had been to an outside hospital the day before the incident due to being "unresponsive" and that the hospital staff said it was a possible overdose. (*See id.* at 14 § V.) The DHO explained that he afforded greater weight to the accounts of the reporting staff members that Fernald provided a urine specimen that was positive for the use of opiates as they derive no known benefit by providing false information and also have a legal obligation to present accurate and factual information. (*See id.*) Significantly, the DHO also afforded "substantial merit" to Fernald's verbal statement to Lieutenant Mrad that "he was still 'High' and he would come 'Hot'". (*See id.*) Based upon the explanation of the DHO of specific evidence relied on to support his finding that Fernald had committed the prohibited act of drug use, we conclude that there was "some evidence" to support the DHO's decision.

## III. CONCLUSION

Because Fernald was afforded all of the due process protections required by *Wolff* and there was "some evidence" to support the DHO's findings, he is not entitled to habeas relief, and the Petition will be denied. An appropriate Order will enter on today's date.